UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDWARDO CORONADO,

    *Plaintiff*,

v.                              CASE NO. 13-cv-12934

COMMISSIONER OF              DISTRICT JUDGE ARTHUR J. TARNOW
SOCIAL SECURITY,                MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**[1]

**I.    RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

**II.    REPORT**

    **A.    Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claims for a period of disability, and Disability

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Insurance Benefits ("DIB"). This matter is currently before the Court on cross-motions for summary judgment. (Docs. 12, 17.)

Plaintiff Edwardo Coronado previously applied for benefits in 2007. In a decision dated November 3, 2009, Administrative Law Judge ("ALJ") John K. Kraybill awarded Plaintiff benefits for a closed period ending January 6, 2007. The current application date relevant to this review is October 14, 2010. (Doc. 9, Transcript at 192.) Plaintiff was 43 years of age at the time of the most recent administrative hearing. (Tr. at 53.) Plaintiff's employment history includes work as a production worker on an assembly line for 8 years. (Tr. at 85.) Plaintiff filed the instant claim on October 14, 2010, alleging that he became unable to work on April 11, 2005.[2] (Tr. at 91.) The claim was denied at the initial administrative stages. (Tr. at 118.) In denying Plaintiff's claims, the Commissioner considered right knee injury, lower back injury, sleep apnea, verge of diabetes and acid reflux as possible bases for disability. (*Id.*) On January 24, 2012, Plaintiff appeared before ALJ Richard E. Guida, who considered the application for benefits *de novo*. (Tr. at 64-91.) In a decision dated February 23, 2012, the ALJ found that Plaintiff was not disabled. (Tr. at 47.) Plaintiff requested a review of this decision on March 1, 2012. (Tr. at 45.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on April 19, 2013, when the Appeals Council denied Plaintiff's request for review. (Tr. at 37-39.) On July 5, 2013, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

---

[2]Plaintiff initially alleged April 11, 2005 as his onset date, but amended it to November 4, 2009, the day after the ALJ decision on his previous application, during the hearing on this application.

### B. Standard of Review

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the

ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability"). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir.

4

1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

    **C.    Governing Law**

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the DIB program of Title II, 42 U.S.C. §§ 401 *et seq*., and the SSI program of Title XVI, 42 U.S.C. §§ 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC [residual functional capacity] and

considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D. ALJ Findings

ALJ Guida applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff last met the insured status requirements on March 31, 2012 and that Plaintiff had not engaged in substantial gainful activity since April 11, 2005, the alleged onset date. (Tr. at 52.) At step two, ALJ Guida found that Plaintiff's degenerative disc disease and degenerative joint disease were "severe" within the meaning of second sequential step. (*Id*.) At step three, ALJ Guida found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 53.) At step four, ALJ Guida found that Plaintiff could not perform any past relevant work. (Tr. at 58.) ALJ Guida also found that as of the alleged disability onset date, Plaintiff was 36 years old, which put him in the "younger individual age 18-44" category. *See* 20 C.F.R. 404.1563. (*Id.*) At step five, ALJ Guida adopted the findings of ALJ Kraybill since there was no new and additional evidence or changed circumstances under S.S.R. 98-4(6) and *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997), and found that Plaintiff could perform a limited range of sedentary work. (Tr. at 55.) ALJ Guida also included additional postural limitations in Plaintiff's RFC to address his back pain. (*Id.*) Therefore, ALJ Guida found that Plaintiff was not disabled. (Tr. at 60.)

### E. Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff had a history of arthroscopic surgeries and a cartilage transplant in his right knee subsequent to a workplace injury on the alleged onset date. (Tr. at 100.) As noted above, Plaintiff

previously applied for and was awarded benefits for a closed period ending January 6, 2007. (Tr. at 55.)

Plaintiff began treating with Mark Sherrard, D.O. for back pain in 2008. (Tr. at 350.) Plaintiff noted that he had injured his back in 1993 while lifting firewood. (*Id.*) An MRI of Plaintiff's lumbar spine showed a "tiny central disc protrusion at L5-S1." (Tr. at 329.) A second MRI from October 2009 showed mild to moderate disc bulge with multilevel spondylosis. (Tr. at 393.) Dr. Sherrard noted that Plaintiff's pain responded well to medication, namely Vicodin and Mobic throughout 2009. (Tr. at 368-405.)

In 2010, Plaintiff complained of worsening back pain and began treating with Daniel Mekasha, M.D., a pain management specialist. (Tr. at 411-414.) Plaintiff underwent a series of epidural lumbar injections in late 2010, (Tr. at 428-436.) Plaintiff noted that the level of his pain lessened overall since beginning pain management treatment. (Tr. at 430.) Plaintiff repeatedly assessed his pain level as only a 5 out of 10. (Tr. at 503-511.)

A state agency medical consultant, William Joh, M.D. completed a physical RFC assessment on Plaintiff in January 2011. (Tr. at 109-115.) Based on his review of Plaintiff's medical records, he concluded that Plaintiff could work at the light exertion level with 2 hours total of standing and walking, with only occasional climbing, stooping, kneeling and crawling. (Tr. at 114-115.)

Dr. Sherrard submitted a physical capacities questionnaire and a letter on Plaintiff's behalf in April 2011 and January 2012, respectively. (Tr. at 439-442; 499.) Dr. Sherrard opined that Plaintiff's use of narcotic medication would preclude his use of heavy machinery. (Tr. at 499.) Dr. Sherrard concluded that Plaintiff would require a job that permitted shifting positions at will, but that he was not required to elevate his leg during an eight-hour workday. (*Id.*) Dr. Sherrard

8

also opined that Plaintiff could lift and carry no more than 10lbs and could not do repetitive twisting, stooping, crouching or climbing. (*Id.*) Based on these limitations, Dr. Sherrard concluded that Plaintiff was "disabled from all forms of gainful employment." (*Id.*)

Plaintiff indicated in his daily activity report that he is able to drive and attends church services lasting for one hour, twice per week, that he is able to shop for groceries and clothing, goes out twice per day, and can care for his personal hygiene. (Tr. at 241-245; 74-76). He testified at the hearing before ALJ Guida that he helps with chores such as laundry and loading the dishwasher. (Tr. at 54).

At the administrative hearing, the ALJ asked the vocational expert ("VE") to consider an individual with Plaintiff's background who "could perform work at the sedentary exertion level, only perform occasional postural movements, except never climb ladders, ropes or scaffolds." (Tr. at 85-86). The VE responded that such a person could not perform Plaintiff's past relevant work but could perform the 500 sedentary unskilled telephone clerk jobs, the 250 sedentary unskilled order clerk jobs and the 200 unskilled mail sorter jobs available regionally. (Tr. at 86.)

The ALJ then added a required sit/stand option to the above hypothetical. (Tr. 86-87.) In response to the ALJ's added sit/stand option, the VE added certain sedentary bench positions that provide for a sit/stand option "because of the nature of the work and how they are peformed." (Tr. at 87.) These jobs included 475 sedentary unskilled finisher jobs, 175 sedentary unskilled assembler jobs and 475 sedentary unskilled preparer jobs in the region. (Tr. at 88.) The VE confirmed that her testimony was consistent with the Dictionary of Occupational Titles ("DOT"), except that the DOT does not address sit-stand options. (Tr. at 87.)

**F.    Applicable Standards**

"No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided . . . ." 42 U.S.C. § 405(h). As a result, a claimant's subsequent application for benefits may be barred by the doctrine of *res judicata*, where the Commissioner has made a final decision or determination on the claimant's rights to benefits based upon the same facts and issues. 20 C.F.R. § 404.957(c)(1).

In this circuit, if a claimant does not appeal an adverse disability determination, nondisability as of the date of decision is established as a matter of *res judicata*. *Carver v. Sec'y of Health & Human Servs.*, 869 F.2d 289 (6th Cir. 1989*); Wills v. Sec'y of Health & Human Servs.*, 802 F.2d 870, 871 n.2 (6th Cir. 1986); *Gibson v. Sec'y of Health & Human Servs.*, 678 F.2d 653, 654 (6th Cir. 1982). *See also Spaulding v. Comm'r of Soc. Sec.*, No. 08-5447, 2009 WL 361397 (6th Cir. Feb. 12, 2009). Therefore, ALJ Kraybill's decision on Plaintiff's previous application, which was not appealed, is *res judicata* as to the issue of whether Plaintiff was disabled as of November 3, 2009, the date of ALJ Kraybill's decision. (Tr. at 92.)

**G.    Analysis and Conclusions**

Plaintiff contends that the ALJ erred in failing to include Plaintiff's use of a cane in the hypothetical and the RFC finding, rejecting the opinion of Plaintiff's treating physician and finding the Plaintiff not credible. (Doc. 12.)  However, the salient issue in this case is whether substantial evidence supports ALJ Guida's decision to adopt the findings of ALJ Kraybill based on his findings that there was no new evidence or changed circumstances under A.R. 98-4(6) and *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997).  If so, then the current RFC and resultant nondisability finding, based on the findings of the previous ALJ, were properly adopted and are unassailable.

10

### i. *Res Judicata*

According to *Drummond*, the Commissioner is bound by a prior final decision determining whether a claimant is entitled to benefits absent "changed circumstances." *Drummond*, 126 F.3d at 843-44. A.R. 98-4(6) implements *Drummond* by directing that courts adopt the findings from a final decision by an ALJ on a prior claim unless there is new and material evidence relating to such finding.

As noted above, ALJ Kraybill's decision is *res judicata* as to the issue of whether Plaintiff was disabled as of November 3, 2009, the date of the decision on Plaintiff's previous application. (Tr. at 92.) Accordingly, the issue is whether new evidence, or changed circumstances permitted ALJ Guida to deviate from the 2009 ALJ decision for the unadjudicated period, November 4, 2009 through February 23, 2012.

ALJ Guida notes in his decision "that the records do not include new and material evidence that suggest changed circumstances." (Tr. at 55.) Accordingly, the RFC set forth in his decision duplicates the limitations set forth in ALJ Kraybill's 2009 decision. Nevertheless, ALJ Guida added postural limitations to the current RFC to address Plaintiff's treatment for worsening back pain.

Plaintiff does not allege that the condition of his right knee has worsened since ALJ Kraybill's 2009 decision. (Doc. 12 at 534.) In fact, Plaintiff tacitly concedes that the circumstances relative to his right knee condition have not changed by arguing only that the new and material evidence regarding his back condition amount to changed circumstances. (Doc 12 at 535.) Specifically, Plaintiff's use of a cane was not a new or changed circumstance since the 2009 decision; ALJ Kraybill specifically considered Plaintiff's use of a cane in developing the 2009 RFC. (Tr. at 101.) Accordingly, consideration of Plaintiff's argument regarding the omission of

11

Plaintiff's use of a cane in both the VE hypothetical and the 2012 RFC is precluded by *res judicata*. *See Drummond*, 126 F.3d at 843-44.

Because ALJ Guida added postural limitations to the 2009 RFC to address Plaintiff's back condition, I will assume that he determined Plaintiff's back condition as a "changed circumstance" and, thus, will address Plaintiff's remaining arguments regarding the rejection of his treating physician's opinion and the assessment of his credibility only as they relate to his back condition.

### ii. Medical Sources

"Medical opinions are statements from physicians and psychologists or other 'acceptable medical sources' that reflect judgments about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." SSR 06-3p, 2006 WL 2329939, at *2 (2006).

The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2). "The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion." 20 C.F.R. § 404.1527(c)(3). "Moreover, when the physician is a specialist with respect to the medical condition at issue, . . . her opinion is given more weight than that of a non-specialist." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011).

Since the Commissioner is responsible for determining whether a claimant meets the statutory definition of disability, the ALJ "will not give any special significance to the source of an opinion[, including treating sources], on issues reserved to the Commissioner described in paragraphs (d)(1) and (d)(2) of this section[,]" i.e., whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, residual functional capacity, and application of vocational factors. 20 C.F.R. § 404.1527(d)(3). A "[d]octor's notation in his notes of a claimed symptom or subjective complaint from the patient is not medical evidence; it is the 'opposite of objective medical evidence.' [Thus,] [a]n ALJ is not required to accept the statement as true or to accept as true a physician's opinion based on those assertions." *Masters v. Astrue*, 818 F. Supp. 2d 1054, 1067 (N.D. Ill. 2011). "Otherwise, the hearing would be a useless exercise." *Id.*

"[O]nce well-supported contradicting evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight . . . [but] 'is just one more piece of evidence for the administrative law judge to weigh . . . .'" *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008) (quoting *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006)). Once the treating source is placed on the same level as other medical opinions, the treating source opinion should not be subjected to "greater scrutiny" than the non-treating sources, especially when there are more flagrant inconsistencies in the opinions of the non-treating sources. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 379-80 (6th Cir. 2013).

If the ALJ declines to give controlling weight to a treating source's opinion, then he must use the following factors to determine what weight the treating source opinion should be given: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson*, 378 F.3d at 544. These factors

13

may be applied to all medical opinions, not just treating sources. SSR 06-3p, 2006 WL 2329939, at *3 (2006). However, because of the special status of treating source opinions, where the ALJ "failed to conduct the balancing of factors to determine what weight should be accorded these treating source opinions . . . , [t]his alone constitutes error." *Cole v. Comm'r of Soc. Sec.,* 652 F.3d 653, 660 (6th Cir. 2011) (quoting *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009)). But this error is not always dispositive and can be considered "harmless error" if: "(1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § 1527(d)(2) . . . even though she has not complied with the terms of the regulation." *Cole*, 661 F.3d at 940 (quoting *Wilson*, 378 F.3d at 547).

"Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5 (1996). *See also Rogers*, 486 F.3d at 242. "This requirement is not simply a formality; it is to safeguard the claimant's procedural rights." *Cole*, 2011 WL 2745792, at *4. "[A] failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

14

As noted above, Plaintiff argues that ALJ Guida erred by rejecting the opinion of Plaintiff's primary care physician, Dr. Sherrard. ALJ Guida gave Dr. Sherrard's opinion some, but not controlling weight, explaining that objective imaging of Plaintiff's lumbar spine showed only mild findings with no neural involvement. (Tr. at 57.) He noted further that Dr. Sherrard's conclusion that Plaitniff was totally disabled was inconsistent with the treatment notes of Plaintiff's other treating physician, Dr. Mekasha (Tr. at 58.) Those notes indicate that Plaintiff demonstrated full strength with normal range of motion, with no motor or sensory deficits in his upper and lower extremities and that his overall level of pain improved since beginning pain management treatment with Dr. Mekasha. (Tr. at 56-58; 480,483.) ALJ Guida's explanation satisfies the "good reason" requirement for not giving Dr. Sherrard's opinion controlling weight, and also demonstrates that he considered the regulatory factors necessary to assign the appropriate weight to Dr. Sherrard's opinion. 20 C.F.R. §404.1527(d) . ALJ Guida noted that Dr. Sherrard had a lengthy treatment history with Plaintiff, but also noted that his conclusions were inconsistent with the objective medical findings and the treatment notes of Plaintiff's treating pain specialist (Tr. at 57.), and thereby adequately justified the subordination of Dr. Sherrard's opinion to those of the other medical sources. *See Wilson*, 378 F.3d at 544. I therefore conclude that the ALJ's decisions regarding the weight to give the medical source opinions was supported by substantial evidence.

I further note that any physician's conclusion that a patient is not able to work is an opinion on the ultimate issue of whether a claimant is disabled, which is reserved to the Commissioner and therefore is not entitled to any weight. 20 C.F.R. § 404.1527(d)(3). Aside from this ultimate conclusion reserved to the Commissioner, ALJ Guida's RFC is consistent with Dr. Sherrard's opinions regarding Plaintiff's limitations. (Tr. at 499.) Accordingly, any error in subordinating Dr.

15

Sherrard's opinion to those of Dr. Mekasha and Dr. Joh would be harmless. *See Cole,* 661 F.3d at 940.

### iii. Credibility

Plaintiff contends that the ALJ erred by discounting Plaintiff's credibility. (Doc. 12.) When a disability determination that would be fully favorable to a claimant cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health and Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, No. 09-5773, 2011 WL 180789 at *4 (6th Cir. Jan. 19, 2011) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility"); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645 at *3 (6th Cir. Feb. 11, 1999) (unpublished). However, "[i]f an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky,* 35 F.3d at 1036.

The social security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p. In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the

alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *See id.*; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky*, 35 F.3d at 1038-39; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. Secondly, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *Id.* Although a claimant's description of his physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," C.F.R. §§ 404.1528(a), 416.929(a), "[a]n individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded *solely* because they are not substantiated by objective medical evidence." SSR 96-7p, at *1 (emphasis added). Instead, the ALJ must consider the following factors:

    (i)     [D]aily activities;

    (ii)    The location, duration, frequency, and intensity of . . . pain;

    (iii)   Precipitating and aggravating factors;

    (iv)   The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

    (v)    Treatment, other than medication, . . . received for relief of . . . pain;

    (vi)   Any measures . . . used to relieve . . . pain.

*Felisky*, 35 F.3d at 1039-40; SSR 96-7p, at *3. Furthermore, the consistency of the evidence, including a claimant's subjective statements, is relevant in determining a claimant's credibility. 20 C.F.R. § 404.1527(c); SSR 96-7p, at *5.

In the instant case, the ALJ thoroughly considered each of the above factors. (Tr. at 53-57.) I suggest that substantial evidence supports the ALJ's findings. Plaintiff's treatment with Dr. Mekasha, his pain management specialist, was limited to epidural injections annd prescription medication. Dr. Mekasha's notes indicate that Plaintiff's pain level improved during his treatment, and Plaintiff described his pain level as only a 5 out of 10. (Tr. at 500-511.)

I further suggest that Plaintiff's own statements about his activities of daily living supports the ALJ's credibility and RFC findings. Plaintiff indicated in his daily activity report that he is able to drive and attends church services lasting for one hour, twice per week. (Tr. at 244-245.) He also indicated that he is able to shop for groceries and clothing. (*Id.*) He testified at the hearing before ALJ Guida that he helps with chores such as laundry and loading the dishwasher. (Tr. at 54.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). I therefore suggest that the ALJ's credibility findings are adequately explained and supported by substantial evidence and provide no ground for reversal.

### H.  Conclusion

For all these reasons, after review of the record, I suggest that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

### III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                               s/ *Charles E Binder*
                                               CHARLES E. BINDER
Dated: August 29, 2014                United States Magistrate Judge